Linda Wong, Esq.
WONG FLEMING, P.C.
821 Alexander Road, Suite 200
Princeton, New Jersey 08543
(609) 951-9520
lwong@wongfleming.com

Laurel Pyke Malson, Esq. (*pro hac vice*)
Amanda Shafer Berman, Esq. (*pro hac vice*)
Eli L. Berns-Zieve, Esq. (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave., NW
Washington, DC 20004
(202) 688-3451
lmalson@crowell.com
aberman@crowell.com

*Counsel for Defendant The Trustees of Princeton University, a not-for-profit educational corp. of the State of New Jersey*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
(Trenton)

| | |
|---|---|
| JANE DOE,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>PRINCETON UNIVERSITY,<br><br>　　　　　　　Defendant. | Civil Action No. 3:21-cv-20264-GC-DEA<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS** |

# <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ...................................................................................ii

INTRODUCTION ...............................................................................................1

ARGUMENT .....................................................................................................2

I.   The statute of limitations bars Doe's hostile environment claim. ............................2

II.  Doe may not amend her Complaint through briefing. ................................................5

III. Doe cannot remedy her failure to allege gender-biased or "severe or pervasive" conduct by Princeton by imputing Smith's alleged assault to the University. ..........7

IV.  Dismissal is appropriate now because Doe's own allegations show that Princeton reasonably responded to her report of sexual assault ................................................10

CONCLUSION ...............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                  **Page(s)**

*Dickerson v. Wallkill Valley Regional High School Board of Education*,
    No. 19-cv-08450, 2020 U.S. Dist. LEXIS 95584 (D.N.J. June 1, 2020) ........... 12, 15

*E.K. v. Massaro*,
    No. 12-2464, 2013 U.S. Dist. LEXIS 144579 (D.N.J. Oct. 7, 2013) ................. 11, 12

*George v. Board of Education of Township of Millburn*,
    34 F. Supp. 3d 442 (D.N.J. 2014) ................................................................12

*Godfrey v. Princeton Theological Seminary*,
    952 A.2d 1034 (N.J. 2008) ..........................................................................14

*L.W. ex rel. L.G. v. Toms River Regional School Board of Education*,
    915 A.2d 535 (N.J. 2007) ............................................................................11

*R.R. v. A.Y.*,
    No. A-1308-13T4, 2015 WL 1401035 (N.J. Super. Ct. App. Div.
    Mar. 30, 2015) .......................................................................................... 15, 16

*Remphrey v. Cherry Hill Township Board of Education*,
    No. 16-3084, 2017 U.S. Dist. LEXIS 7882 (D.N.J. Jan. 20, 2017) .................... 12, 15

*Vandegrift v. Bowen*,
    No. 07-2623, 2009 WL 1913412 (D.N.J. June 30, 2009) ............................................12

*Pa. ex rel. Zimmerman v. Pepsico, Inc.*,
    836 F.2d 173 (3d Cir. 1988) .........................................................................9

**Statutes**

N.J. Stat. Ann. § 2A:14-2b .........................................................................5, 6

**Other Authorities**

Fed. R. Civ. P. 19 ........................................................................................................10

March 7, 2019 N.J. Judiciary Committee Hearing, available at
  https://www.njleg.state.nj.us/archived-media/2018/SJU-meeting-
  list/media-player?committee=SJU&agendaDate=2019-03-07-
  13:00:00&agendaType=M&av=A ...............................................................................7

R. Campbell and S. Raja, *Secondary Victimization of Rape Victims: Insights
  from Mental Health Professionals Who Treat Survivors of Violence* ........................................6

**INTRODUCTION**

Plaintiff's Opposition confuses the issues and goes beyond her Complaint. Contrary to Doe's suggestion, the Complaint does *not* claim that Princeton is liable for the alleged sexual assault by fellow graduate student John Smith. Rather, Doe's NJLAD hostile environment claim is premised on the University's alleged "actions and inactions *following* her report of sexual assault[.]" ECF No. 1 at 2 (emphasis added).

This immutable fact dooms Doe's claim. Because Doe does not bring suit against Princeton for injuries resulting from sexual assault—but, rather, for what she admits are "secondary" injuries, allegedly resulting from the University's mishandling of her report of assault—she cannot invoke New Jersey's 2019 Amendments to the statute of limitations (S477) providing a two-year "lookback" window for the filing of otherwise stale sexual assault claims. Contrary to Doe's arguments, New Jersey did not create an exception to the statute of limitations for all conduct related to an alleged sexual assault.

On the merits, Doe's further contention that the Court should look to Smith's actions when assessing whether Doe has alleged a viable hostile environment claim against Princeton also misses the mark. Unlike in the cases on which Doe relies, Doe alleges that Princeton created a hostile environment through actions *after* the alleged assault, not that Princeton enabled the assault or failed to stop it. Thus, it is Princeton's alleged post-assault actions, not the alleged assault itself, that must be considered when assessing whether Doe asserted a viable hostile environment claim against Princeton.

1

Even if Doe's claim were timely and the Court looked to Smith's alleged actions, rather than Princeton's, to assess the claim's viability, it still would fail. Doe's own allegations and documents integral to the Complaint show that the University responded reasonably to Doe's claim of sexual assault by promptly initiating a disciplinary proceeding against Smith pursuant to the University's policies in place at that time (2010-11). Now, more than a decade later, this Court should decline Doe's request to second-guess the outcome of that process. Under New Jersey law, Princeton's prompt investigation and adjudication of Doe's report of sexual assault is more than sufficient to defeat Doe's hostile environment claim.

## ARGUMENT

### I.    The statute of limitations bars Doe's hostile environment claim.

Doe essentially argues that New Jersey's two-year "lookback window" for otherwise time-barred sexual assault claims applies to *any* institutional conduct related to an alleged sexual assault. Not so. Princeton does not dispute that the lookback window can permit otherwise stale claims to proceed, but New Jersey limited that exception to claims for "injur[ies] resulting from the commission of sexual assault[.]" N.J. Stat. Ann. § 2A:14-2b. Thus, it may apply where an institution is alleged to have *enabled* a sexual assault, thereby *causing* the injury resulting from the assault—but that is not what Doe alleges. Her claim therefore remains subject to the NJLAD's two-year statute of limitations, which has long expired for alleged misconduct in 2010-11.

The genesis of the injury of which Doe complains is conduct *after* the assault. Doe alleges that Princeton "[mis]handle[ed] [her] report of sexual assault," Compl. ¶¶ 38-39; Opp'n to Mot. to Dismiss (ECF No. 21) ("Opp'n") at 1 (asserting that Princeton injured Doe by "failing to take effective action following Plaintiff's report to it that she had been sexually assaulted"). Doe does not allege that Princeton enabled or even failed to prevent the alleged assault. Thus, even if the Court accepts Doe's claim that Princeton's handling of her report caused Doe "severe emotional distress" (*id.* at 16), such injury would not "result[] from *the commission of* sexual assault," as required to avoid the normal limitations period. N.J. Stat. Ann. § 2A:14-2b (emphasis added).

Doe's arguments to the contrary are self-defeating. Doe argues that, by failing to adequately respond to the alleged sexual assault, the University "inflicted a secondary injury[.]" Opp'n at 16. She then leaps to the conclusion that this "secondary" injury "result[ed] from a sexual assault." *Id.* But "secondary" injuries are just that: secondary. The very academic literature on which Doe relies explains that "secondary" injuries are not the result of the sexual assault itself, but "result[] from negative, judgmental attitudes and behaviors directed toward the victim" *after the assault*, "[w]hen rape victims' needs are ignored[.]"[1] Doe's admission that the injury for which she now seeks redress

---

[1] *See* R. Campbell and S. Raja, *Secondary Victimization of Rape Victims: Insights from Mental Health Professionals Who Treat Survivors of Violence*, Violence & Victims, Vol. 14, No. 3 at 262 (1999); *see also* Opp'n at 14-15 (quoting same).

is "secondary" to the injury from the assault is an admission that her injury is not subject to the amended statute of limitations for injuries "resulting from" sexual assault.

Doe also castigates Princeton for a supposedly "brazen effort to invent 'legislative history,'" claiming that the University mischaracterized a comment from Senator Vitale "on the day that he [and others] were celebrating the Legislature having voted to pass S477." Opp'n at 16-17. But Princeton's brief quoted a statement from Senator Vitale, explaining that S477 would hold institutions responsible "if the institution *enabled* the abuse,"[2] which was offered "[d]uring the New Jersey Senate Judiciary Committee's hearing on the 2019 Amendments" on March 7, 2019—not a May 2019 celebration of the passing of the bill. Br. at 13. Doe has simply identified a separate instance of Senator Vitale stating that the purpose of the bill is to permit liability for persons and institutions "that *enabled* [sexual] abuse." Opp'n at 17 (quoting from video of comments by legislators after passing of S477) (emphasis added). The Senator's two statements are consistent on the key point: institutions may be held liable under the two-year lookback provision *if they enabled sexual abuse.*[3]  That is not what Doe alleges here that Princeton did.

---

[2] The relevant statement begins at 5 minutes and 25 seconds on the recording of the March 7, 2019 Judiciary Committee Hearing, available at https://www.njleg.state.nj.us/archived-media/2018/SJU-meeting-list/media-player?committee=SJU&agendaDate=2019-03-07-13:00:00&agendaType=M&av=A.

[3] These statements are also consistent with language that Doe purports to quote from the Senate Judiciary Committee, stating that the goal of the legislation was to "permit

Far from "preposterous," Opp'n at 17, Princeton's assertion that Doe's claim for the University's alleged mishandling (in 2010-11) of her report of sexual assault remains time-barred is consistent with S477's plain text and legislative history. The Court therefore should decline Doe's invitation to consider her claims, arising from Princeton's actions *following* her report of a sexual assault, as within the statutory two-year look back window provided by S477, and dismiss Doe's claim as untimely.

## II.   Doe may not amend her Complaint through briefing.

Doe's Opposition impermissibly seeks to amend her Complaint by now asking the Court to consider the actions of a third party, John Smith, as the primary basis for Doe's hostile environment claim against Princeton. The Court should decline to do so.

The Complaint asserted a single claim against Princeton—that the University created a hostile environment in violation of the NJLAD—premised on its "actions and inactions following Plaintiff's report of the sexual assault[.]" Compl. ¶ 44. Doe complains, for example, of the treatment she received at the University SHARE and Health Centers, and alleges that Princeton "allowed the [disciplinary] hearing to be conducted in a way that was grossly inequitable." *Id.* ¶¶ 24-41. The Complaint does *not*,

---

retroactive application of standards of liability to past *acts of abuse*[.]" Opp'n at 18, n.11 (citing https://www.njleg.state.nj.us/bill-search/2018/S477) (emphasis added). Although the cited web page does not contain the quoted language, this is consistent with Princeton's argument:  the two-year lookback window enables late claims for "acts of abuse," not for alleged actions or inactions after acts of abuse.

however, allege that Princeton caused, or failed to take action to prevent, the alleged assault by John Smith. Doe does not allege, for example, that a hostile environment existed on campus *prior to* the alleged sexual assault and enabled that assault.

In opposing Princeton's motion to dismiss, Doe now asserts that the Court must look to her allegations that Smith violently raped her when assessing whether she has met the elements of a NJLAD hostile environment claim. Opp'n at 25-26 (asserting that "*the conduct of John Smith, the alleged rapist*, would not have occurred but for Plaintiff's gender" and was "sufficiently severe or pervasive") (emphasis added). Doe tries to bolster those allegations with a new "Certification" attesting to additional harassment by Smith. *Id.* at 10-11. But a complaint "may not be amended by the briefs in opposition to a motion to dismiss," whether to add new allegations or to change the nature of the claim. *Pa. ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (internal quotation omitted).

Notably, Doe does *not* argue that Princeton's own alleged misconduct is sufficient to establish the elements of her NJLAD claim. *See* Opp'n at 25-28. The reason for this pivot is obvious: Doe cannot premise a viable hostile environment claim on the University's conduct. By now asking the Court to instead find that Doe stated a viable hostile environment claim *based on Smith's alleged unlawful actions*, Doe is essentially asking this Court to redo the University's Title IX disciplinary proceeding and reach a different outcome: *i.e.*, to find that Smith raped Doe. Not only is this different from the claim

asserted in the Complaint—that Princeton's mishandling of Doe's report of assault created a sexually hostile environment—but this belated theory of liability implicates an individual who is not a party to this case.  If Doe wishes this Court to find that Smith raped her (which, following the theory of liability set forth in Doe's Opposition, the Court would have to do to enter judgment in Doe's favor on her hostile environment claim), then Smith is an essential party to this litigation that Doe has failed to join. *See* Fed. R. Civ. P. 19 (requiring joinder of parties who have "an interest relating to the subject of the action" that may be impaired if they are not present). But that is not the case that Doe brought, and she should not be permitted to go beyond her Complaint to attempt to belatedly make out a viable hostile environment claim.

## III. Doe cannot remedy her failure to allege gender-biased or "severe or pervasive" conduct by Princeton by imputing Smith's alleged assault to the University.

Implicitly admitting that she did not allege that *Princeton's* conduct was gender-biased or sufficiently severe or pervasive to give rise to a hostile environment claim, Doe points only to John Smith's alleged sexual assault to establish these elements. Opp'n at 25-28. But the Complaint, Doe admits, "is alleging that Defendant's liability arises from [Princeton's] numerous failures *in response to Plaintiff's complaint* of sexual assault[.]" *Id.* at 38 (emphasis added). The conduct on which Doe premises Princeton's liability thus is *not* the alleged assault, and so Doe may not now point the Court to that

assault to determine whether there is a basis on which to hold Princeton liable under the NJLAD.

The case law Doe cites is inapposite. Her contention that the Court must look to the underlying assault (Opp'n at 19-25) misconstrues *L.W. ex rel. L.G. v. Toms River Regional School Board of Education*, 915 A.2d 535, 540 (N.J. 2007), which did not involve a failure to take appropriate action *following* assault or harassment, but rather held that NJLAD liability may lie where an educational institution "knew or should have known of the harassment but failed to take actions reasonably calculated to end the mistreatment[.]" Here, Doe alleges no facts suggesting that the University knew or should have known of the alleged assault or failed to take effective measures to stop it. The relevant inquiry, in light of Doe's allegation that Princeton mishandled her report of assault and thereby created a hostile environment, is not whether the *alleged assault* was "but for" Doe's gender and severe or pervasive, but whether *Princeton's alleged conduct after the assault* was "but for" Doe's gender and severe or pervasive.

None of the other cases Doe cites suggest otherwise. In each, the plaintiff sought to hold the institution liable for enabling the sexual assault or harassment itself, rather than post-assault conduct. For example, in *E.K. v. Massaro*, No. 12-2464, 2013 U.S. Dist. LEXIS 144579, at *23-24 (D.N.J. Oct. 7, 2013), the plaintiff sued his assailant-teacher and school based on an illegal sexual relationship between plaintiff and his teacher. Unlike here, the *Massaro* plaintiff did not complain of the school's handling of the

assault after the fact, but that the school enabled the relationship between teacher and student to continue, ignoring plaintiff's mother's report of the relationship and assigning the assailant to another class in the same school. *Id.* Similarly, the plaintiff in *Dickerson v. Wallkill Valley Regional High School Board of Education*, No. 19-cv-08450, 2020 U.S. Dist. LEXIS 95584, at *20-21 (D.N.J. June 1, 2020), alleged that the school created a hostile environment by "permit[ing] racial harassment" to continue during a basketball game, not through after-the-fact conduct.[4] Here, in contrast, the allegations on which Doe's claim is based are the University's actions to address the alleged assault after the fact, including how Princeton conducted the disciplinary proceeding against Smith and the responses of other University personnel. It is these allegations that must meet the elements of a NJLAD hostile environment claim, including that the conduct at issue was (a) gender-based and (b) severe or pervasive.

Doe did not allege any facts that, if true, would show that any misconduct *by the University* was because of Doe's sex, or sufficiently severe or pervasive to give rise to a hostile environment claim. As explained in Princeton's motion, Doe's allegations that

---

[4] Plaintiff also cites *George v. Board of Education of Township of Millburn*, 34 F. Supp. 3d 442 (D.N.J. 2014), and *Remphrey v. Cherry Hill Township Board of Education*, No. 16-3084, 2017 U.S. Dist. LEXIS 7882 (D.N.J. Jan. 20, 2017), neither of which sought to hold the institution liable for its own conduct *after* harassment or assault. And in *Vandegrift v. Bowen*, No. 07-2623, 2009 WL 1913412, *3-5 (D.N.J. June 30, 2009), the officer accused of harassment was a defendant, and the NJLAD claim against the city was sustained because the plaintiff alleged that it had failed to implement policies to "deter and/or prevent" harassment and thus was "a *direct and proximate cause* of Plaintiff's harm."

the disciplinary proceeding was unfair, even if assumed true, do not show gender-bias, nor do they show conduct *by the University* that was severe or pervasive. Br. at 17-23, 29-32. In the background of her Opposition (at 5), Doe points to allegations that Princeton's Health and SHARE centers improperly treated or advised her. But Doe does not allege that she was given such advice or treatment because of her sex, nor does she argue that these actions were severe or pervasive enough to give rise to a hostile environment claim. Doe relies only on the alleged assault by Smith to establish both gender-bias and severe or pervasive misconduct. But as discussed above, that approach is not consistent with the NJLAD case law or with Doe's obligation to allege facts sufficient to state a viable claim against the defendant she sued: Princeton.

## IV. Dismissal is appropriate now because Doe's own allegations show that Princeton reasonably responded to her report of sexual assault.

Even were the Court to look to the alleged assault to establish the first two elements of a hostile environment claim, Doe's claim still would fail because her own allegations and documents integral to her Complaint show that Princeton reasonably addressed her report of sexual assault through a robust disciplinary process—even if Doe does not agree with the outcome of that process.

Doe argues that "[b]ecause this issue involves the 'reasonableness' of a school's response to a complaint of sexual . . . assault, it is . . . ill-suited to be resolved via a motion to dismiss for failure to state a claim." Opp'n at 28. But while "reasonableness"

often may be a fact-sensitive determination, Doe's own allegations show that Princeton applied its sexual misconduct policy by initiating a disciplinary process against Smith upon receipt of Doe's report, and also took immediate steps to prevent further contact between Doe and Smith. Under New Jersey law, that is sufficient to show that the institution responded reasonably for purposes of a NJLAD hostile environment claim.

In assessing whether a plaintiff has shown that an institution failed to reasonably respond to claims of sexual harassment and assault, courts consider "whether an [institution]'s preventative measures exist and have been enforced[.]" *Godfrey v. Princeton Theological Seminary*, 952 A.2d 1034, 1048 (N.J. 2008). Here, Doe concedes that the University followed its sexual assault policies and procedures in place at the time. Specifically, Doe's allegations admit, and the U.S. Department of Education ("DoE") Determination Letter confirms, that the University (1) "informed [Doe] of the complaint reporting options and available resources"; (2) "issued a [No Contact Order] restricting contact between [Doe] and [Smith]"; (3) quickly initiated a comprehensive disciplinary process that involved gathering evidence and providing both parties with opportunities to testify and ask questions; and (4) issued a written decision. Compl. ¶¶ 24-35 & Br., Ex. D (DoE Letter) at 16. The University's documentation of that process, on which Doe relies, further confirms that Doe and Smith each had a full opportunity to submit evidence and testimony over the course of the three-day hearing. *See* Br., Ex. A (March 10, 2011 Disciplinary Decision Letter).

11

Princeton's conduct is easily distinguished from cases on which Doe relies, in which institutions were found to have failed to take reasonable measures to address harassment or assault. In *Remphrey*, 2017 U.S. Dist. LEXIS, at \*1, a high school teacher sexually harassed a student, which the student reported to the school's guidance counselor, principal, and superintendent. In response, "[t]he guidance counselor . . . instructed [the student] to return to [the teacher]'s class and took no action to investigate [the] claims" and "neither [the superintendent] nor the Board of Education notified the . . . [p]olice; secured videotape of the hallway where the incident occurred . . . or took *any other steps* to investigate [the student]'s complaint." *Id.* (emphasis added). Because the school *entirely* "failed to investigate … complaints" of sexual harassment and "violated its own protocols," *id.* at \*5, the Court declined to dismiss the student's NJLAD claim. Similarly, in *Dickerson*, the school failed to "take *any* meaningful action" when the crowd at a basketball game racially taunted the only African American student athlete and his family. 2020 U.S. Dist. LEXIS 95584, at \*1-2, \*28-29 (emphasis added).

The alleged facts here could not be more different. Doe admits that Princeton investigated and then adjudicated her report of sexual assault in three-day hearing. This case is thus unlike those Doe cites, and akin to *R.R. v. A.Y.*, No. A-1308-13T4, 2015 WL 1401035, at \*1 (N.J. Super. Ct. App. Div. Mar. 30, 2015). There, after a report of harassment by a student, the university responded swiftly, providing the plaintiff with information about reporting options and services; prohibiting contact between the

12

plaintiff and her alleged harasser; and initiating a disciplinary proceeding. *Id.* at *1, *8. The *R.R.* court therefore found "that [the university] took immediate and appropriate steps to address the situation" and affirmed dismissal of the NJLAD claim. *Id.* at *7-8. Doe distinguishes *R.R.* because it was decided on summary judgment (Opp'n at 35), but the facts that were the basis for summary judgment there are already evident here from Doe's Complaint, and so dismissal now is appropriate.

Doe argues that she meets the "unreasonable response" requirement of a hostile environment claim because Princeton's process did not meet all requirements of Title IX. Opp'n at 36. But even if true, that would not suffice to show that Princeton failed to reasonably address Doe's claims for purposes of the NJLAD. Indeed, Doe herself argues that these two different legal standards should not be equated. *Id.* at 34. The DoE has also recognized the differences between a NJLAD hostile environment claim and a Title IX claim, as is apparent from the DoE's findings that, while Princeton's process had not met all requirements of Title IX, the University did *not* create a hostile environment for Doe. *See* Br., Ex. D (DoE Letter). Even if Princeton's disciplinary process did not meet all Title IX requirements, it is sufficient to show that Princeton reasonably responded to Doe's assault claim for purposes of the NJLAD.

Pivoting from her prior focus on the disciplinary proceeding, Doe points to her allegation that she was given incorrect advice by Princeton's SHARE Center (which counsels victims of sexual harassment) regarding the relevance of rape kit evidence in a

disciplinary proceeding. Opp'n at 29, 38. There are several reasons this allegation does not show an unreasonable response by Princeton to Doe's report of assault. First, Doe has cited to no case law suggesting that a University's duty to reasonably respond to a sexual assault claim includes an obligation to advise its students to submit to an invasive rape examination.[5] Furthermore, Doe admitted during the disciplinary hearing that the University did not perform rape tests, and that it offered her the option of being examined at the hospital—which she declined after telling the providers that she did not want to press charges.[6] Doe also admits that the then-Director of the SHARE Center explained "that she had little knowledge about [Princeton]'s disciplinary

---

[5] Common sense explains why an educational institution has no such obligation. Any DNA sample collected from Doe would have to be matched with a DNA sample from Smith, which the University had no power to compel Smith to provide. And any potential match would have only demonstrated that sexual contact between Smith and Doe occurred, which Smith did not contest; it would not have indicated whether such contact was consensual, which was the issue before the disciplinary panel.

[6] [Panel Member]: A minor clarification. When I asked Joy Montero about the policy of McCosh, she told me they don't do rape kits. The [*sic*] advise rape victims to be tested at the hospital.

Doe: Yes, that's true.

. . .

[Panel Member]: And none of them [referring to the SHARE director, a McCosh doctor, and a McCosh nurse] encouraged you to go to the hospital to be examined?

Doe: No, none of them did. No.

[Panel Member]: Did they offer it as an option?

Doe: They did offer it as an option, yes.

(Ex. A at 1-2).

process," and "referred Plaintiff to Associate Dean Montero." Compl. ¶ 20. Considered in full and in context, Doe's allegations about her interactions at the SHARE and Health Centers come nowhere close to showing that Princeton's response to Doe's report of assault was "unreasonable" under the NJLAD. To the contrary, Doe admits that University personnel informed Doe of her options and referred her to the disciplinary process for sexual misconduct complaints.

Doe may not agree with the result of that process, but if the assertion that the university "got it wrong" were sufficient to state a viable NJLAD hostile environment claim, such a claim would lie at the close of every disciplinary proceeding, giving the disappointed participant a judicial "redo." As the cases above demonstrate, however, it takes allegations of University misconduct that go far beyond a student's disagreement with a university's resolution of her claim to establish the "unreasonable response" element of a NJLAD hostile environment claim. Conversely, where the University had and reasonably applied a policy to address the claimed sexual assault, no such claim lies. Doe's own allegations so demonstrate, and her NJLAD claim therefore fails.

## CONCLUSION

Doe's NJLAD hostile environment claim should be dismissed with prejudice.

April 29, 2022                                    Respectfully submitted,

                                        /s/ Linda Wong
                                        Linda Wong, Esq.
                                        WONG FLEMING, P.C.

821 Alexander Road, Suite 200
Princeton, New Jersey 08543
(609) 951-9520
lwong@wongfleming.com

Laurel Pyke Malson, Esq. (*pro hac vice*)
Amanda S. Berman, Esq. (*pro hac vice*)
Eli L. Berns-Zieve, Esq. (*pro hac vice*)
CROWELL & MORING LLP
1001 Pennsylvania Ave. NW
Washington, DC 20004
(202) 688-3451
aberman@crowell.com

## CERTIFICATE OF SERVICE

I hereby certify that on April 29, 2022, a true and correct copy of the foregoing was furnished by CM/ECF to all counsel of record.

*/s/ Linda Wong*
Linda Wong, Esq.