**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

JANE DOE,

      Plaintiff,                    Civil Action No.: 21-20264(GC)

v.                                                      **OPINION**

PRINCETON UNIVERSITY,

      Defendants.

<u>**CASTNER, District Judge**</u>

Plaintiff Jane Doe ("Plaintiff") filed a complaint ("Complaint") against Princeton University ("University" or "Defendant"), alleging violations of the New Jersey Law Against Discrimination, N.J. Stat. Ann. §§ 10:5–1 *et seq.* (2005) ("NJLAD") in connection with an alleged incident of sexual assault and rape in 2010. Presently before the Court is Defendant's motion to dismiss (the "Motion") the Complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, the Motion is **GRANTED**. Plaintiff is given leave to amend her Complaint within 30 days from the date of the accompanying Order, consistent with this Opinion.

## I.   BACKGROUND

### a.  Factual Background

The relevant facts herein are derived from Plaintiff's Complaint. Plaintiff Jane Doe was a female first-year doctoral student at Princeton University during the 2010–2011 school year. (Complaint ("Compl.") ¶ 2, Ex. A, ECF No. 1.) On or around December 18–19, 2010, Plaintiff

alleged that she was sexually assaulted and raped by John Smith, a male second-year doctoral student enrolled in the same doctoral program as Plaintiff. (*Id.* ¶¶ 5, 18.)

The day after the incident, on December 20, 2010, Plaintiff sought assistance from the University Health Services Center and the University Sexual Harassment/Assault Advising, Resources and Education ("SHARE") Center. (*Id.* ¶ 21.) During Plaintiff's initial visit and each subsequent visit, the Health Services Center did not conduct any STD testing or physical examination of Plaintiff. (*Id.*) Nor did the Health Services Center document any of Plaintiff's physical injuries, which included bruising on her neck and thighs. (*Id.*) With respect to the SHARE Center, Plaintiff alleged that the then-Interim Director provided her incorrect information on the use of "rape kit evidence" during the University disciplinary process. (*Id.* ¶ 20.)

Plaintiff first reported the incident through Defendant's online reporting form. (Compl. ¶ 15.) On December 21, 2010, Plaintiff then reported the incident to Associate Dean of the University Graduate School Joy Montero. (*Id.* ¶ 16.) On January 6, 2011, Plaintiff met with Montero in person to discuss her allegations, (*id.*), and subsequently, on January 17, 2011, Plaintiff filed a formal written report against Smith. (*Id.* ¶¶ 17–18.)

Plaintiff alleges that Defendant acted improperly in its handling of her report of sexual assault and rape in several ways. First, Plaintiff alleges that Defendant chose not to conduct a comprehensive fact-gathering investigation and instead, the investigation was conducted by Deans who were untrained, unqualified, and inexperienced investigators. (*Id.* ¶¶ 22–23.) Second, after Defendant referred Plaintiff's report to a disciplinary hearing, (Compl. ¶ 25), Plaintiff alleged that the panel members selected by Defendant to conduct and oversee the hearing included male faculty members that were untrained and inexperienced. (*Id.* ¶ 32.) Third, in preparing for the hearing, while Defendant allowed Smith to solicit written testimony from faculty members, Defendant

allegedly instructed Plaintiff not to involve faculty. (*Id.* ¶ 27.) Fourth, at the hearing, Defendant required Plaintiff to prove that she was sexually assaulted by the heightened burden of "clear and convincing" evidence. (*Id.* ¶ 34.) Smith's "advisor", or representative, was a Princeton professor, while Plaintiff's "advisor" was a Princeton graduate student. (*Id.* ¶ 26.) Fifth, Defendant also permitted Smith's advisor to cross-examine Plaintiff using "victim-blaming and gender-biased questioning." (*Id.* ¶¶ 30–31.)

After the conclusion of the disciplinary hearing, the panel recommended that Smith be found not responsible for violating the University's sexual assault policy and that no disciplinary penalty should be imposed against Smith because there was insufficient evidence to substantiate Plaintiff's allegations against him. (Compl. ¶ 35.) The panel's recommendation was accepted by then-Dean of the University Graduate School William Russel and subsequently, Defendant informed Plaintiff that she had no right to appeal this ruling. (*Id.* ¶¶ 35–36.)

As a result of the incident and Defendant's handling of it thereafter, Plaintiff alleged she suffered "severe emotional distress, psychological and emotional injuries/trauma, humiliation, and anguish." (*Id.* ¶¶ 41, 51.) She also alleged that the incident caused her to withdraw from her doctoral program. (*Id.* ¶ 37.)

### b. Procedural History

On November 29, 2021, Plaintiff filed the Complaint against Defendant in New Jersey Superior Court, pursuant to N.J. Stat. Ann. § 2A:14-2b(a), which provides a two-year revival window for otherwise time-barred claims arising out of sexual offenses. (Compl. ¶ 3.) The Complaint asserts one cause of action under N.J. Stat. Ann. § 10:5–4 for gender-based discrimination. Specifically, Plaintiff alleges that Defendant subjected her to a hostile educational environment based on her gender because of Defendant's failure to take prompt and effective

remedial action in response to her report of sexual assault and rape by another student at the University. (*Id.* ¶¶ 42–51.) On November 30, 2021, Defendants removed the case to federal court, pursuant to 28 U.S.C. § 1441, on the basis of diversity jurisdiction. (ECF No. 1.) On February 7, 2022, Defendant moved to dismiss the Complaint pursuant to Rule 12(b)(6). (ECF No. 17.)

## II.   <u>STANDARD OF REVIEW</u>

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted). While Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To determine whether a plaintiff has met the facial plausibility standard under *Twombly* and *Iqbal*, courts within this Circuit apply a three-step test. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "outline the elements a plaintiff must plead to

state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Next, the court "peel[s] away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id.* Finally, where "there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## III.  DISCUSSION

### a.  Statute of Limitations

First, Defendant seeks dismissal of Plaintiff's NJLAD claim by arguing that it was not timely filed within the applicable statute of limitations period, and that the extended statute of limitations period pursuant to N.J. Stat. Ann. § 2A:14–2b does not apply to Plaintiff's cause of action. (Def. Br. at 11.)

Defendant may raise a statute of limitations defense in a 12(b)(6) motion to dismiss if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Perelman v. Perelman*, 545 Fed.Appx. 142, 149–50 (3d Cir. 2013) (quoting *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002)). The time bar must be evident on the face of the complaint for the complaint to create a basis for dismissal. *Id.* In diversity actions, such as the instant case, federal courts apply the substantive law of the forum state, which includes state statutes of limitations. *Lafferty v. St. Riel*, 495 F.3d 72, 76 (3d Cir. 2007); *see also Warriner v. Stanton*, 475 F.3d 497, 499–500 (3d Cir. 2007) ("[I]n a diversity action, a district court must apply the choice of law rules of the forum state to determine what law will govern the substantive issues of a case.").

Here, Plaintiff argues that her claim is timely pursuant to New Jersey's 2019 legislation extending the statute of limitations in civil actions for claims for sexual offenses. (Compl. ¶ 44;

Pl. Opp. Br. at 12.)  The statute created a two-year window, from December 1, 2019 to November 30, 2021, during which parties may bring otherwise time-barred civil actions resulting from the commission of a sexual assault, "any other crime of a sexual nature," or statutorily defined sexual acts or sexual abuse.  N.J. Stat. Ann. § 2A:14–2b; *see also* Governor Murphy Signs Legislation Extending the Civil Statute of Limitations for Sexual Abuse Claims in New Jersey, Governor Phil Murphy                     (May                     13,                     2019), https://www.nj.gov/governor/news/news/562019/approved/20190513c.shtml.     The statute, in relevant part, provides:

> Notwithstanding the statute of limitations provisions of N.J.S.2A:14-2, section 2 of P.L.2019, c. 120 (C.2A:14-2a), section 1 of P.L.1964, c. 214 (C.2A:14-2.1), or any other statute, an action at law *for an injury resulting from the commission of sexual assault*, any other crime of a sexual nature, a prohibited sexual act as defined in section 2 of P.L.1992, c. 7 (C.2A:30B-2), or sexual abuse as defined in section 1 of P.L.1992, c. 109 (C.2A:61B-1), that occurred prior to the effective date of P.L.2019, c. 120 (C.2A:14-2a et al.), and which action would otherwise be barred through application of the statute of limitations, may be commenced within two years immediately following the effective date.

N.J. Stat. Ann. § 2A:14–2b(a) (emphasis added).

Defendant argues that N.J. Stat. Ann. § 2A:14–2b does not apply to Plaintiff's claim because it does not extend the statute of limitations for actions against third parties for conduct occurring after the sexual assault.  (Def. Br. at 11.)  Further, Defendant contends that N.J. Stat. Ann. § 2A:14–2b does not extend the statute of limitations for "all injuries remotely related to sexual assault or abuse."  (Def. Br. at 12–13.)  But such restrictions are inconsistent with the plain language of the statute.  *See Rosano v. Twp. of Teaneck*, 754 F.3d 177, 186 (3d Cir. 2014) ("As with any question of statutory interpretation, our analysis begins with the plain language of the statute" (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)).

The statute's plain language unambiguously provides the two-year revival window for "an action at law for an injury *resulting from* the commission of a sexual assault".  N.J.S.A. § 2A:14–

2b(a) (emphasis added); *see also Bernard v. Cosby*, No. 21-18566, 2023 WL22486, at *3 (D.N.J. Jan. 3, 2023). When interpreting statutory language, it is not the Court's role to "rewrite a plainly-written enactment of the Legislature [ ]or presume that the Legislature intended something other than that expressed by way of the plain language." *DiProspero v. Penn*, 183 N.J. 477, 492 (internal quotations and citations omitted). Had the New Jersey Legislature intended to limit the claims that could be brought under N.J. Stat. Ann. § 2A:14-2b to only those for injuries that were directly related to the sexual offense, or against the actual perpetrator of the offense, it could have done so. *See Bernard*, 2023 WL22486, at *4. Instead, it chose the broader term, "injury resulting from". The Supreme Court has held that "[a] thing 'results' when it '[a]rise[s] as an effect, issue, or outcome from some action, process or design.'" *Burrage v. United States*, 571 U.S. 204, 210–11 (2014) (quoting 2 The New Shorter Oxford English Dictionary 2570 (1993)).

Here, Plaintiff's claim arises from Defendant's alleged misconduct following and in response to Plaintiff's report of sexual assault and rape by Smith. She alleged that a commission of sexual assault occurred. *See Bernard*, 2023 WL22486, at *5 (concluding that plaintiffs may access the revival window by alleging commission of sexual assault or other sexual offense). She also alleged that she suffered an injury arising from, or resulting from, that sexual assault through the Defendant's improper disciplinary response to her report of the sexual assault. As plead, Plaintiff's claim does fall within the protection of N.J. Stat. Ann. § 2A:14–2b such that it triggers the revival window. Accordingly, the Court finds that Plaintiff's claim, which was timely filed within the N.J. Stat. Ann. § 2A:14–2b revival window, is not time-barred.

### b.  Hostile Educational Environment Under the NJLAD

Next, the Court considers whether the allegations in the Complaint have sufficiently plead a plausible cause of action for hostile educational environment under the NJLAD, N.J. Stat. Ann. § 10:5–4.

The NJLAD provides, in relevant part, that: "All persons shall have the opportunity to obtain ... all the accommodations, advantages, facilities, and privileges of any place of public accommodation ... without discrimination because of race ... This opportunity is recognized as and declared to be a civil right." N.J. Stat. Ann. § 10:5–4.  One of the NJLAD's broad remedial goals is to prevent sexual harassment in places of public accommodation. *Doe v. Schwerzler*, No. 06-3529, 2008 WL 4066338, at *4 (D.N.J. Aug. 27, 2008).  In order to achieve such a goal, the NJLAD is to be "liberally construed", N.J. Stat. Ann. § 10:5–3, and broadly applied.  *Schwerzler*, 2008 WL 4066338, at *4.

Courts have extended the NJLAD beyond the employment context to apply to gender discrimination in a school setting. *See L.W. ex rel. L.G. v. Toms River Reg'l Sch. Bd. of Educ.*, 189 N.J. 381, 406 (2007); *Schwerzler*, 2008 WL 4066338, at *4.  To state a hostile school environment claim under the NJLAD, an aggrieved student must allege: (1) "discriminatory conduct that would not have occurred 'but for' the student's protected characteristic," (2) "that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment, and" (3) "that the school district failed to reasonably address such conduct." *Thomas v. E. Orange Bd. of Educ.*, 998 F.Supp.2d 338, 348 (D.N.J. 2014) (quoting *L.W.*, 189 N.J. at 402). "[A] school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or

constructive knowledge of the harassment and fails to take effective measures to end the discrimination." *Joyce v. City of Sea Isle City*, No. 04-5345, 2008 WL 906266, at *23 (D.N.J. Mar. 31, 2008) (citations omitted). "When assessing a school district's liability, the factfinder must determine whether the district, with actual or constructive knowledge of the maltreatment, took actions reasonably calculated to end the harassment." *L.W.*, 189 N.J. at 411–12. Further, the factfinder must determine reasonableness "in light of the totality of the circumstances." *Id.* at 408– 09.

Here, Plaintiff alleges that Defendant's disciplinary response to Plaintiff's report of sexual assault and rape by one of Defendant's student was inadequate. Plaintiff alleges that the investigation and hearing process were improperly conducted because the process was overseen by untrained, unqualified, and inexperienced University staff. (Compl. ¶¶ 22–23, 32.) Plaintiff also alleges that Defendant conducted the hearing in a manner that was discriminatory to Plaintiff based on her gender. For instance, she alleges that Defendant (1) allowed Smith, not Plaintiff, to solicit written testimony from faculty members, (*id.* ¶ 27), (2) permitted Smith's advisor to cross-examine her using gender-biased and victim-blaming questioning, (*id.* ¶¶ 30–31), and (3) required her to prove that she was sexually assaulted by the heightened burden of "clear and convincing" evidence. (*Id.* ¶ 34.) In sum, Plaintiff contends that Defendant's failures, "through actions and inactions following Plaintiff's report of the sexual assault and rape" resulted in a hostile environment in violation of the NJLAD. (*Id.* ¶ 44.)

Defendant argues that Plaintiff's claim should be dismissed for failure to state a claim because the Complaint fails to satisfy each of the three elements required for a hostile school environment claim under the NJLAD. (Def. Br. at 16.) In opposition, Plaintiff argues that, in reviewing whether the Complaint sufficiently pleads a hostile educational environment claim, the

court may only consider "whether the Complaint alleges that the underlying harassment or assault happened on account of the student's protected characteristic [e.g. gender, race, etc.]; the issue is not whether the school's response to such conduct was motivated by or happened on account of the student's protected characteristic." (Pl. Opp. Br. at 20, 21, 22.)

Unlike in prior NJLAD cases pertaining to hostile educational environments, the alleged conduct underlying Plaintiff's claim is Defendant's actions and inactions in response to Plaintiff's report of sexual assault. (Compl. ¶ 44 ("Defendant, through its actions and inactions following Plaintiff's report of the sexual assault and rape, denied Plaintiff—on account of her sex—'the accommodations, advantages, facilities, and privileges' provided by Defendant as a place of public accommodation.").) The Complaint does not allege that Defendant created a hostile environment that allowed the alleged sexual assault and rape to occur in the first place. Nor does Plaintiff contend that Defendant could or should have done more to end the alleged sexual assault or to prevent similar misconduct from happening again.

In her briefing for this motion, Plaintiff attempts to argue that "the conduct of John Smith, the alleged rapist, would not have occurred but for Plaintiff's gender" and was "sufficiently severe or pervasive" to establish the first two elements of a hostile school environment claim. (Pl. Opp. Br. at 25–27.) However, such arguments are unpersuasive because they lack factual support or assertions in the Complaint.[1]  Plaintiff alleges that the sexual assault and rape involved "sexual

---

[1] Defendant notes in its Reply Brief that Plaintiff pleads new facts in her Opposition Brief relating to Smith's conduct following Plaintiff's report. (Def. Reply Br. at 6; Pl. Opp. Br. at 10–11.) The Court decides this motion disregarding any additional factual matter not asserted in the Complaint because "a plaintiff may not amend her complaint through arguments in a brief." *Hall v. Revolt Media & TV, LLC*, No. 17-2217, 2018 WL 3201795, at *3 (D.N.J. 2018) (citing *Com. Of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)); *see also, e.g., Cheeseman v. Baxter Healthcare Corp.*, No. 08-4814, 2009 WL 1351676, at *4 (D.N.J. May 13, 2009) (internal quotations omitted) (finding that plaintiff's complaint failed to allege adequate facts to suggest the elements of their hostile work environment claim under NJLAD).

contact" and "sexual penetration", and that Smith exhibited "a series of sexually aggressive conduct" towards her prior to the assault. (Compl. ¶¶ 4, 6.) Had she specifically plead that the underlying sexual assault by Smith was the discriminatory conduct upon which her claim is based, such sexual misconduct could be sufficient to establish that the misconduct occurred because of her gender. *Lehmann v. Toys R Us, Inc.*, 132 N.J. 587, 605 (1993) ("When the harassing conduct is sexual or sexist in nature, the but-for element will automatically be satisfied.") Instead, Plaintiff alleges that it was Defendant's actions that were "on account of her sex". (Compl. ¶ 44.)

With respect to the second element of a *prima facie* claim, Plaintiff does not assert any specific facts in connection with the alleged sexual misconduct and assault by Smith demonstrating it was "sufficiently severe or pervasive" to create a hostile educational environment. The New Jersey Supreme Court conformed the severe-or-pervasive element under the NJLAD to the same standard for a hostile environment claim under federal Title VII law. *See Lehmann*, 132 N.J. at 606. "The required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Lehmann*, 132 N.J. at 607 (internal quotations and citations omitted). For instance, under Title VII, the Supreme Court has held that allegations, "which include not only pervasive harassment but also criminal conduct of the most serious nature," such as repeated sexual assault or rape over a period of four years, were "plainly sufficient" to state a claim for hostile work environment. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 60, 67 (1986). "[A]lthough it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable woman, make the working environment hostile, such a case is certainly possible." *Id.* at 606–07. Here, the Complaint alleges that "[t]he sexual assault and rape...*coupled with* Defendant's failure to take prompt and effective remedial action following Plaintiff's report of that sexual assault and rape were severe or pervasive enough

to make a reasonable woman believe that…the school environment was hostile." (Compl. ¶ 48) (emphasis added). But Plaintiff fails to plead any facts to support a finding that the alleged sexual assault "coupled with" Defendant's response to Plaintiff's report of the assault were "severe or pervasive enough" to create a hostile school environment. *See L.L. v. Evesham Twp. Bd. of Educ.*, 710 Fed.Appx. 545, 549 (3d Cir. 2017) ("[U]nder the NJLAD, a student seeking to prevail on a hostile environment claim must establish that the complained of conduct was 'severe or pervasive enough to' create a hostile environment.")

In support of her argument, Plaintiff cites to various cases in which the courts "look[ed] to the conduct of the harasser or assailant, not to the response of the institution to whom the report of harassment is made". (Pl. Opp. Br. at 25).   Contrary to Plaintiff's contentions, this case is materially distinguishable from those cases as here, the "complained-of conduct" that caused Plaintiff's injuries was Defendant's response to her complaint, not the actual incident of alleged sexual assault by Smith.   For example, the Complaint alleges that "[a]s a result of Defendant's … actions and inactions in its handling of Plaintiff's report of sexual assault and rape by one of Defendant's graduate students, Defendant denied Plaintiff--on account of her sex--"the accommodations, advantages, facilities, and privileges" provided by Defendant as a place of public accommodation". (Compl. ¶ 38.)

In contrast, the cases cited by Plaintiff contain specific allegations as to the schools' failures to prevent or end the alleged misconduct. *See, e.g., L.W.*, 189 N.J. at 403 (noting that the focus is on a school's actions, or inactions, "in *preventing and addressing* a hostile school environment") (emphasis added).   For instance, in *E.K. v. Massaro*, the plaintiff alleged that the school board allowed a teacher's sexual relationship with the student *to continue* after it refused to respond to the concerns of the plaintiff's mother. (Pl. Br. at 20) (citing No. 12-2464, 2013 WL 5539357, at

*8 (D.N.J. Oct. 7, 2013)). In *Dickerson v. Wallkill Valley Reg'l High Sch. Bd. of Educ.*, the plaintiff alleged that the defendant school board "permitted racial harassment" during a school basketball game where the school did nothing to stop spectators from using repeated racial slurs directed exclusively at the plaintiff and his family. No. 19-08450, 2020 WL 2847757, at *9 (D.N.J. June 1, 2020). Plaintiff also cites *George v. Bd. of Educ. of Twp. of Millburn*, in which the plaintiff alleged that the school board's conduct was inadequate in allowing the racial bullying *to continue throughout plaintiff's enrollment* at the school. (Pl. Br. at 21) (citing 34 F.Supp.3d 442, 448–450 (D.N.J. 2014)). And in *Remphrey v. Cherry Hill Twp. Bd. of Educ.*, the plaintiff specifically alleged that it was the teacher's sexual harassment towards her that created the hostile school environment. No. 16-3084, 2017 WL 253951, at *4 (D.N.J. Jan. 20, 2017).

Instead, the Court finds instructive an analogous case in this District, *Jones v. Ewing Twp. Bd. of Educ.*, in which the district court found that the student plaintiff sufficiently stated a NJLAD hostile educational environment claim against a township's board of education for her sexual assault by a fellow student. No. 09-3536, 2010 WL 715554, at *5 (D.N.J. Feb. 26, 2010). Specifically, the court found that plaintiff plausibly alleged a hostile educational environment spanning the pre-assault and post-assault time periods. *Id.* Pre-assault, the court found that the assailant's violent propensities toward female students and his assault of plaintiff was conduct that created a hostile educational environment. *Id.* But because plaintiff pled that defendant was aware of the assailant's violent propensities and sexually inappropriate behavior prior to the assailant's attack on plaintiff, the court found it plausible that defendant's failure to act on that knowledge fostered a hostile educational environment in which the assailant was able to assault plaintiff. *Id.* at *2, 4–5. Specifically, defendant allowed the assailant to continue attending classes, allowed the assailant to ride on plaintiff's school bus, and otherwise took no steps to protect young female

students, including plaintiff. *Id.* at *2, 5. After the assault, the hostile educational environment continued due to physical and verbal harassment plaintiff experienced as a result of the assault and the school's failure to address her transfer request to a different school or otherwise end the harassment. *Id.* at *5.

Here, in contrast, the University first became aware of the alleged assault after it had occurred upon the filing of Plaintiff's report. (Compl. ¶ 15.) Defendant's alleged failures, as asserted in Plaintiff's complaint, are as of "the time of Plaintiff's report to Defendant", (*id.* ¶¶ 6–8, 11–14), rather than at a time period preceding or leading up to the alleged incident. Indeed, Plaintiff fails to allege any conduct, or lack thereof, during the pre-assault period that was "severe or pervasive enough" to create a hostile educational environment in which the alleged assault occurred. After the alleged incident and after the Defendant had actual knowledge of the sexual assault following Plaintiff's report, Plaintiff fails to allege continued or ongoing discriminatory misconduct or harassment she experienced that was based on her gender. *See Joyce*, 2008 WL 906266, at *23 ("[A] school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination.") As such, there was no alleged discrimination or misconduct that Defendant failed to end after the alleged sexual assault. Plaintiff does plead that she was mistreated by Defendant during the disciplinary proceedings and some of which was due to her gender based upon the alleged preferential treatment of Smith over her. (*See, e.g.*, Compl. ¶ 27 (allowing Smith, not Plaintiff to obtain faculty testimony), ¶¶ 30–31 (allowing gender-biased questioning during cross-examination; ¶ 34 (allowing Smith to have better representation at the hearing).) However, Plaintiff has failed to sufficiently plead how the combined instances of mistreatment and other

procedural issues were severe or pervasive enough such that a reasonable female student with the same age and maturity level as Plaintiff would agree it fostered an intimidating, hostile, or offensive school environment. *See L.W.*, 189 N.J. at 402–03.  In sum, the Court finds that Plaintiff has not plead sufficient facts to establish either the first or second element for a hostile educational environment claim under the NJLAD.[2]  The allegations in the Complaint are not sufficient to plead that Smith's alleged conduct was motivated by gender bias or that such conduct was sufficiently severe or pervasive enough to create a hostile school environment.  Accordingly, the Court finds that Plaintiff has failed to sufficiently plead a plausible claim for hostile educational environment based on gender under the NJLAD.  Plaintiff's claim is dismissed without prejudice.

## IV.   CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is **GRANTED**.  To the extent that Plaintiff believes she can plead additional facts to cure the deficiencies in her Complaint, Plaintiff is given leave to amend her Complaint within 30 days from the date of the accompanying Order.

Date: February 28, 2023

/s/ Georgette Castner
Hon. Georgette Castner
U.S. District Judge

---

[2] Defendant also argues that Plaintiff failed to plausibly plead that the University failed to reasonably address her sexual assault claim in connection with the third element of a *prima facie* case. (Def. Br. at 23.)  However, for the purposes of ruling on the instant motion, this Court need not determine the reasonableness of the University's response to Plaintiff's report of sexual assault and rape.  A school's response to discriminatory peer harassment must be measured under a standard of reasonableness in the educational context, *L.W.*, 189 N.J. at 411, and "[o]nly a fact-sensitive, case-by-case analysis will suffice to determine whether a school district's conduct was reasonable in its efforts to end the harassment." *Id.* at 498.