<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JANE DOE,<br><br>                    Plaintiff,<br><br>     v.<br><br>PRINCETON UNIVERSITY,<br><br>                    Defendant. | Civil Action No. 21-20264 (GC) (DEA)<br><br>**<u>OPINION</u>** |

**<u>CASTNER, District Judge</u>**

**THIS MATTER** comes before the Court upon Defendant Princeton University's Motion to Dismiss (ECF No. 32) Plaintiff Jane Doe's Amended Complaint (ECF No. 28) pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Plaintiff opposed, and Defendant replied. (ECF Nos. 33 & 36.) The Court has carefully considered the parties' submissions and decides the Motion without oral argument pursuant to Rule 78(b) and Local Civil Rule 78.1(b). For the reasons set forth below, and other good cause shown, Defendant's motion is **DENIED**.

**I.     BACKGROUND**

**A.  F**ACTUAL **B**ACKGROUND[1]

Plaintiff Jane Doe was a female first-year doctoral student at Defendant Princeton University during the 2010–2011 school year. (First Amended Complaint ("Am. Compl.") ¶ 2, ECF No. 28.) Plaintiff alleges that over the period of December 18–19, 2010, John Smith — a male second-year doctoral student enrolled in the same program as Plaintiff — brutally sexually

---

[1]     On a motion to dismiss under Rule 12(b)(6), the Court accepts as true all well-pleaded facts in the Amended Complaint. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).

assaulted and raped her, leaving her with significant, visible bruising. (*Id.* ¶¶ 6–12.) Plaintiff contends that the sexual assault and rape "was directed at Plaintiff on account of her sex, and would not have occurred but for Plaintiff's sex, in that Smith, a male, perpetrated a sexual assault and rape against Plaintiff, a woman." (*Id.* ¶ 11.)

Plaintiff reported the incident immediately through Defendant's online reporting system. (*Id.* ¶ 5.) On December 21, 2010, she reported the incident to Joy Montero, an Associate Dean of the University Graduate School. (*Id.*) On January 6, 2011, Plaintiff met with Dean Montero to provide additional details. (*Id.*) On January 7, 2011, Plaintiff filed a nineteen-page formal complaint against Smith with Defendant. (*Id.* ¶ 6).

After Plaintiff reported the sexual assault, Defendant issued a "no-contact order" between Plaintiff and Smith. (*Id.* ¶ 13.) Thereafter, however, Defendant failed to adequately address Plaintiff's report of sexual assault in multiple ways. The day after the incident, on December 20, 2010, Plaintiff sought assistance from Defendant's Sexual Harassment/Assault Advising, Resources and Education (SHARE) Center and the University Health Services Center. (*Id.* ¶ 21.) During her initial visit and several subsequent visits, the Health Services Center did not test Plaintiff for STDs, conduct a physical examination, or document Plaintiff's bruising. (*Id.* ¶ 23.) Additionally, on December 20, 2010, the then-Interim Director of the SHARE Center incorrectly informed Plaintiff that there was no need to retrieve "rape kit evidence" because such evidence would not be used during the University's disciplinary process. (*Id.* ¶ 22.) The Director also admitted to Plaintiff that she knew little about Defendant's disciplinary process. (*Id.*) Plaintiff further accuses Defendant of failing to conduct a thorough investigation, primarily because it was conducted by Deans who were untrained, unqualified, and inexperienced investigators. (*Id.* ¶¶ 24–25.) Plaintiff claims that this insufficient investigation and the Health Services Center's errors

were a result of Defendant's failure to train its staff on the proper handling of sexual assault reports. (*Id.* ¶¶ 26, 47–52.)

Next, Plaintiff claims that her then-boyfriend received an anonymous, sexually obscene letter that Plaintiff believes was sent by Smith due to the letter's timing and contents. (*Id.* ¶¶ 13–15.) The letter was sent sometime after Defendant's issuance of the "no-contact order," and before a disciplinary hearing that Defendant had scheduled in response to Plaintiff's report of sexual assault. (*Id.* ¶14.) On February 12, 2011, Plaintiff reported the letter to Dean Montero and informed her that she was concerned for her personal safety. (*Id.* ¶ 17.)

Plaintiff also alleges that the disciplinary hearing convened in response to her report was "grossly inequitable." (*Id.* ¶ 28.) First, Defendant allowed a "prominent professor" in the graduate department to submit a letter to the panel on Smith's behalf, despite a policy requiring the graduate department to remain neutral. (*Id.* ¶ 43.) Defendant also allowed Smith to solicit written testimony from faculty members, but instructed Plaintiff not to involve faculty. (*Id.* ¶ 30.) Plaintiff alleges that Defendant's actions deprived her of "critical witness testimony" from faculty to whom she had previously reported the sexual assault. (*Id.*) Second, Smith's interests at the hearing were represented by a distinguished Princeton professor and Nobel Prize nominee, while Plaintiff's representative was a fellow graduate student. (*Id.* ¶ 29.) Third, Defendant permitted Smith's representative to cross-examine Plaintiff using "victim-blaming and gender-biased questioning." (*Id.* ¶ 33.) Fourth, Defendant also required Plaintiff to prove that she was sexually assaulted under the heightened burden of "clear and convincing" evidence. (*Id.* ¶ 37.) Finally, the panel was composed of "untrained and inexperienced" male faculty members. (*Id.* ¶ 35.)

At the close of the hearing, the panel determined that there was insufficient evidence to substantiate Plaintiff's allegations and recommended that Defendant impose no disciplinary

penalty against Smith. (*Id.* ¶ 38.) Defendant's then-Dean of the University Graduate School, William Russel, informed Plaintiff that he accepted the panel's recommendation and that she had no right of appeal. (*Id*. ¶ 38 & 39.) As a result of the hearing, Defendant allowed Smith to remain enrolled in the graduate program with no restrictions on his attendance of departmental events, including classes, lectures, reading groups, seminars, and "coffee hours." (*Id*. ¶ 40.) Plaintiff alleges that "it was inevitable that she would be forced to regularly be in the presence of Smith, the man who had raped her." (*Id*. ¶ 41.) She pleads that as a result of the "inequitable" proceeding, "and facing the prospect of remaining in the very small graduate department where she would inevitably be in the presence of Smith, Plaintiff was left with no other choice than to withdraw from graduate school." (*Id*. ¶ 37.)

### B. Procedural History

On November 29, 2021, Plaintiff filed her original Complaint against Defendant in New Jersey Superior Court, pursuant to N.J. Stat. Ann. 2A:14-2b(a), which provides a two-year revival window for otherwise time-barred claims arising out of sexual offenses. (ECF No. 1.) The Complaint asserted one cause of action under New Jersey's Law Against Discrimination for gender-based discrimination. (*Id.*) On November 30, 2021, Defendant removed the case to federal court based on diversity jurisdiction.[2] (*Id.* ¶¶ 1–7.) Defendant then moved to dismiss the Complaint under Rule 12(b)(6). (ECF No. 17.)

The Court granted Defendant's first motion to dismiss. (ECF Nos. 26 & 27.) The Court found that Plaintiff's claim was not time-barred because she filed it within the two-year revival

---

[2] The Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1).

4

window under § 2A:14-2b.  (ECF No. 26 at 7.[3])  But the Court found that the Plaintiff did not plead sufficient facts to establish the first or second element for a hostile education environment claim under the NJLAD.  (*Id.* at 15.)  Specifically, Plaintiff did not sufficiently plead that Smith's alleged rape was motivated by gender bias, or that such conduct was sufficiently severe or pervasive enough to create a hostile school environment.  (*Id.* at 15.)  The Court did not determine whether Defendant failed to reasonably address such conduct, which is the third element of a hostile education environment claim under the NJLAD.  (*Id.* at 15 n. 2.)  The Court granted Plaintiff thirty days to file an amended complaint.  (*Id.* at 15.)

On March 28, 2023, Plaintiff filed an Amended Complaint, asserting one cause of action for a hostile education environment under the NJLAD.  (ECF No. 28.)  On May 15, 2023, Defendant filed the current Motion to Dismiss now before the Court.  (ECF No. 32.)  Plaintiff opposed, and Defendant replied.  (ECF Nos. 33 & 36.)

## II.  STANDARD OF REVIEW

Rule 12(b)(6) provides that a court may dismiss a claim "for failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  On a Rule 12(b)(6) motion for failure to state a claim, "courts accept all factual allegations as true" and "construe the complaint in the light most favorable to the plaintiff."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotations and citations omitted).

When considering a Rule 12(b)(6) motion, a district court conducts a three-part analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'"  *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662,

---

[3]  Page numbers for record cites (*i.e.*, "ECF Nos.") refer to the page numbers stamped by the Court's e-filing system and not the internal pagination of the parties.

675). "Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Third, the court must determine whether the well-pleaded facts "plausibly give rise to an entitlement for relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679); *see also Fowler v. UMPC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). Although Rule 8(a)(2) does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, the complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. All reasonable inferences must be made in the plaintiff's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**III.    DISCUSSION**

The NJLAD provides in relevant part: "All persons shall have the opportunity to obtain . . . all the accommodations, advantages, facilities, and privileges of any place of public accommodation . . . without discrimination because of . . . sex, [or] gender identity or expression. . . . This opportunity is recognized as and declared to be a civil right." N.J. Stat. Ann. § 10:5–4. One of the NJLAD's broad remedial goals is to prevent sexual harassment in places of public

6

accommodation. *Doe v. Schwerzler*, Civ. No. 06-3529, 2008 WL 4066338, at *4 (D.N.J. Aug. 27, 2008). To achieve that goal, the NJLAD must be "liberally construed," N.J. Stat. Ann. § 10:5–3, and broadly applied, *Schwerzler*, 2008 WL 4066338, at *4.

The NJLAD applies to gender discrimination in a school setting. *Thomas v. East Orange Bd. of Educ.*, 998 F.Supp.2d 338, 348 (D.N.J. 2014) (citing *L.W. ex rel. L.G. v. Toms River Regional Sch. Bd. of Educ.*, 915 A.2d 535, 550 (N.J. 2007); *Lehmann v. Toys R Us, Inc.*, 626 A.2d 445 (N.J. 1993)); s*ee also Frank v. Ivy Club*, 576 A.2d 241, 260 (N.J. 1990) (noting that Princeton University is subject to the NJLAD). To state a hostile school environment claim under the NJLAD, an aggrieved student must allege (1) "discriminatory conduct that would not have occurred 'but for' the student's protected characteristic," (2) "that a reasonable student of the same age, maturity level, and protected characteristic would consider sufficiently severe or pervasive enough to create an intimidating, hostile, or offensive school environment," and (3) "that the school district failed to reasonably address such conduct." *Thomas*, 998 F.Supp.2d at 348 (quoting *L.W.*, 915 A.2d at 547). In a hostile educational environment claim under the NJLAD, when assessing "a school district's liability, the factfinder must determine whether the district, with actual or constructive knowledge of the maltreatment, took actions reasonably calculated to end the harassment." *L.W.*, 915 A.2d at 553. *See also Joyce v. City of Sea Isle City*, Civ No., 2008 WL 906266, at *23 (D.N.J. Mar. 31, 2008) ("[T]he *L.W.* court states that a school is liable for a hostile school environment when it grants a supervisor authority to control the school environment and the supervisor either abuses that authority or has actual or constructive knowledge of the harassment and fails to take effective measures to end the discrimination.").[4]

---

4     Moreover, the New Jersey Supreme Court expressly declined to adopt the "deliberate indifference" standard under Title IX for a claim under the NJLAD in a school setting. *L.W.*, 915 A.2d at 549.

Plaintiff, in her original Complaint, alleged that "*Defendant*, through its actions and inactions . . . denied Plaintiff—on account of her sex—'the accommodations, advantages, facilities, and privileges' provided by Defendant as a place of public accommodation." (ECF No. 1 ¶ 44 (emphasis added).) In her Amended Complaint, however, Plaintiff specifically pleads that Smith's underlying sexual assault is the discriminatory conduct upon which her claim is based. (Am. Compl. ¶ 11 ("The sexual assault . . . was directed at Plaintiff on account of her sex, and would not have occurred but for Plaintiff's sex . . . ."); *id.* ¶ 20 ("As a result of the sexual assault and rape and subsequent harassing conduct, Plaintiff was subjected to discriminatory conduct that would not have occurred 'but for' her protected characteristic, *i.e.*, her sex . . . .").)

When the alleged underlying misconduct of a hostile environment claim under the NJLAD "is sexual or sexist in nature, the but-for element will automatically be satisfied." *Lehmann*, 626 A.2d at 454. Therefore, by pleading the alleged sexual assault as the underlying discriminatory conduct that would not have occurred "but for" her protected characteristic, Plaintiff has established the first element of a *prima facie* hostile school environment claim under the NJLAD. *See E.K. v. Massaro*, Civ. No. 12-2464, 2013 WL 5539357, at *8 (D.N.J. Oct. 7, 2013) (finding that a teacher's sexual assault of a student would not have occurred "but for his gender" in a hostile educational environment claim under the NJLAD).

In its motion to dismiss, Defendant argues that Plaintiff has not established this first element because she has not shown that Defendant's conduct — its disciplinary response to Plaintiff's report of sexual assault — was motivated by Plaintiff's sex. (*See* ECF No. 32-1 at 2.) Defendant's argument is misplaced. To establish this first element, Plaintiff need only allege that the underlying misconduct — as opposed to the *school's response* to the underlying conduct — was motivated by her protected characteristic. Illustrative of this concept is *L.W. ex rel. L.G. v.*

*Toms River Regional School Board of Education*, 915 A.2d 535 (N.J. 2007). There, student L.W. experienced several years of sexual harassment by his peers based on their perception of his sexual orientation. *Id.* at 390–396. The New Jersey Supreme Court held that the NJLAD "permits a cause of action against a school district for student-on-student harassment based on an individual's perceived sexual orientation if the school district's failure to reasonably address that harassment has the effect of denying to that student any of the school's 'accommodations, advantages, facilities or privileges.'" *Id.* at 402. In *L.W.*, student-on-student sexual harassment was the underlying misconduct based on a protected characteristic. *Id.* at 389–90. Similarly here, student-on-student sexual assault forms the underlying misconduct that would not have occurred but for Plaintiff's protected characteristic. (Am. Compl. ¶¶ 11–12, 20, 61–62.) Just as the plaintiffs in *L.W.* were not required to allege that the *school district* discriminated against L.W. based on his protected characteristic, Plaintiff need not allege that Defendant acted with gender bias when responding to her report of sexual assault.[5] Because Plaintiff's Amended Complaint alleges student-on-student sexual assault that would not have occurred but for Plaintiff's gender, the Court finds that the first element of a *prima facie* case is met.

The Court turns next to the second element of a *prima facie* claim of a hostile school environment under the NJLAD — whether a reasonable student of the same age, maturity level, and protected characteristic would consider the discriminatory conduct sufficiently severe or

---

[5] Although the Amended Complaint still accuses Defendant of acting with "gender bias" in its disciplinary process (Am. Compl. ¶¶ 33, 45), such accusations may go to the reasonableness of Defendant's response to the report of sexual assault. *See L.W.*, 915 A.2d at 551 (noting that when assessing the reasonableness of a school district's response to discrimination, the factfinder looks to, in relevant part, "school culture and atmosphere . . . history of harassment within the school district . . . [and] effectiveness of the school district's response"). As it relates to the first element, the Amended Complaint clearly alleges that it was Smith's "sexual assault and rape and subsequent harassing conduct" that a reasonable, similarly situated student would consider "severe or pervasive enough to create" a hostile educational environment. (Am. Compl. ¶ 62.)

9

pervasive enough to create an intimidating, hostile, or offensive school environment. *L.W.*, 915 A.2d at 547. When determining whether discriminatory conduct was severe or pervasive, courts look to the harassing conduct itself, and not its effect on the plaintiff or on the environment. *Lehmann*, 626 A.2d at 455 (citing *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991)). The "severe or pervasive" standard is "disjunctive," in that plaintiffs may base an action on a single, extremely severe incident "[a]lthough it will be a rare and extreme case in which a single incident will be so severe that it would, from the perspective of a reasonable woman, make the working environment hostile." *Id.*

In her Amended Complaint, Plaintiff alleges that over the course of about two days, Smith brutally sexually assaulted her, the details of which the Court need not repeat here. (Am. Compl. ¶¶ 8, 12.) Plaintiff claims that she was left with significant bruising on her jaw, throat, and inner thighs. (*Id.* ¶ 9.) She also reported to Defendant that she was "forced to confront [Smith] on a regular basis" on campus and within her department (*id.*); and that "it was inevitable that she would be forced to regularly be in the presence of Smith, the man who had raped her" (*id.* ¶ 41).

Accepting these allegations as true and viewing them in a light most favorable to Plaintiff, the Court finds that Plaintiff has pled facts plausibly supporting her claim that the sexual assault was "severe" enough to create a hostile educational environment. *See Fowler*, 578 F.3d at 210. Although the New Jersey Supreme Court stated it would be a "rare and extreme" case for a single incident to be severe enough to create a hostile environment, it explicitly recognized that such a case is possible. *Lehmann*, 626 A.2d at 455. Here, viewing Plaintiff's allegations in a light most favorable to her, the Court finds that this single incident — spanning two days, consisting of multiple violent sexual assaults, and leaving Plaintiff with multiple bruises — could be severe enough such that a reasonable, similarly situated student would find the educational environment

10

hostile if she continued to regularly encounter her assailant in intimate academic settings. *See Vandegrift v. Bowen*, Civ. No. 7-2623, 2009 WL 1913412, at *5 (D.N.J. Jun. 30, 2009) (holding that, where a police officer asked plaintiff to hand over her undergarments during a traffic stop and made sexually explicit overtures to the plaintiff that same night and the following morning, plaintiff's NJLAD claim survived a motion to dismiss because a single incident of harassment can create a hostile environment); *Taylor v. Metzger*, 706 A.2d 685, 690–91 (N.J. 1998) (finding that a rational factfinder could conclude that a coworker's single use of a racial slur was sufficiently severe to create a hostile environment under the NJLAD).

Finally, the Court addresses the third element — whether Plaintiff has sufficiently pled that the school district failed to reasonably address Smith's discriminatory conduct. *See Thomas*, 998 F. Supp. 2d at 348 (quoting *L.W.*, 915 A.2d at 547). An institution's "response to peer harassment [is] measured under a standard of reasonableness in the educational context." *L.W.*, 915 A.2d at 552. "[T]he factfinder must determine whether the [school] district, with actual or constructive knowledge of the maltreatment, took actions reasonably calculated to end the harassment." *Id.* at 553. "Only a fact-sensitive, case-by-case analysis will suffice to determine whether a school district's conduct was reasonable in its efforts to end the harassment." *Id.* at 551. Factfinders must examine the totality of the circumstances such as "the students' ages, developmental and maturity levels; school culture and atmosphere; rareness or frequency of the conduct; duration of harassment; extent and severity of the conduct; whether violence was involved; history of harassment within the school district, the school, and among individual participants; effectiveness of the school district's response; whether the school district considered alternative responses; and swiftness of the school district's reaction." *Id.*

Accepting Plaintiff's allegations as true, Plaintiff plausibly pleads that Defendant had

11

actual knowledge of the underlying sexual assault, failed to reasonably address the sexual assault and ongoing sexual harassment, and that Defendant's failures had the ultimate effect of denying her access to Defendant's accommodations, advantages, facilities, and/or privileges. *See Jones*, v. *Ewing Twp. Bd. Of Educ.*, Civ. No. 09-3536, 2010 WL 715554, at *5 (D.N.J. Feb. 26, 2010). First, Plaintiff alleges that Defendant's Health Services Center and SHARE Center declined to preserve any evidence that ultimately could have been used at the disciplinary hearing. (Am. Compl. ¶¶ 21–23.) The then-Interim Director of the SHARE Center — which is ostensibly meant to provide advice, resources, and education to victims of sexual assault — admitted to Plaintiff that she knew little of the disciplinary process. (*Id.* ¶ 22.) Plaintiff also claims that the no-contact order was not effective in preventing her from encountering Smith. (*Id.* ¶ 19.) Thus, Plaintiff has alleged sufficient facts at the motion to dismiss stage to plausibly question the "effectiveness of the [school]'s response." *L.W.*, 915 A.2d at 551.

Additionally, Smith enjoyed several advantages over Plaintiff in the disciplinary process. Specifically, a professor in the department submitted a letter on Smith's behalf despite the department's policy of neutrality (Am. Compl. ¶ 43); Defendant allowed Smith to solicit faculty testimony and deprived Plaintiff of the same ability (*id.* ¶ 30); Smith was represented at the hearing by a professor and Nobel Prize nominee, whereas Plaintiff was represented by a fellow graduate student (*id.* ¶ 29); and Defendant deprived her of "critical witness testimony" (*id.* ¶ 30). Plaintiff alleges that these errors and inequities resulted in the unfavorable result at the disciplinary hearing, with Smith being allowed to remain in Plaintiff's presence without any restrictions. (*Id.* ¶ 38–41.) These facts, if true, could plausibly support a claim that Defendant's response was unreasonably ineffective, and that Defendant fostered a "culture and atmosphere" of effectively siding with one party over the other. *See L.W.*, 915 A.2d at 551.

Defendant argues that Plaintiff has not alleged facts that, if true, show that Defendant failed to reasonably address her report of sexual assault. Defendant points to the fact that upon receipt of Plaintiff's report, it immediately issued a no-contact order between Plaintiff and Smith, investigated the alleged assault, and initiated a disciplinary proceeding. (ECF No. 32-1 at 11.) To be sure, such facts can support the effectiveness and immediacy of the school district's response. *See L.W.*, 915 A.2d at 551. Still, the existence of facts favorable to Defendant's case does not mean that, as a matter of law, Plaintiff has failed to plead any facts supporting her claim that Defendant's response was unreasonable. A factfinder may ultimately find that Defendant's response to Plaintiff's report of sexual assault was reasonable, even if Plaintiff can identify flaws in the process. *See id.* at 550. ("[A] district is not compelled to purge its schools of all peer harassment to avoid liability."). "[T]he issue on a Rule 12(b)(6) motion, however, is 'not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim.'" *J.M. ex rel. A.M. v. East Greenwich Tp. Bd. Of Educ.*, Civ. No. 7-2861, 2008 WL 819968, at *9 (D.N.J. Mar. 25, 2008) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 563 n. 8 (2007)). Here, Plaintiff has plausibly alleged a flawed investigation and unfair disciplinary hearing which, if true, could support the claim that Defendant's response was unreasonable.

Defendant also argues that Plaintiff's claim should fail because Plaintiff has not alleged that Defendant, "once on notice of the assault, failed to take steps to prevent its reoccurrence." (ECF No. 32-1 at 30.) Indeed, in its February 28, 2023 Opinion, this Court contrasted the present case with *Jones v. Ewing Twp. Bd. Of Educ.*, Civ. No. 09-3536, 2010 WL 715554 (D.N.J. Feb. 26, 2010). (ECF No. 26 at 13–14.) In *Jones*, the defendant was aware of a student's sexually inappropriate behavior and failed to act on that knowledge, which plausibly fostered a hostile educational environment in which the student was able to assault the plaintiff. 2010 WL 715554,

at *2, 4–5.  Critically, however, Plaintiff in this case had based her original Complaint of gender discrimination on the part of *Defendant*, and not Smith.  (ECF No. 26 at 10 ("[T]he alleged conduct underlying Plaintiff's claim is Defendant's actions and inactions in response to Plaintiff's report of sexual assault.").)  In that context, the Court compared Defendant's actions with the *Jones* school's actions when analyzing the second element of a *prima facie* case — whether Defendant's actions were "severe or pervasive enough" to create a hostile environment.  (*Id.* at 12–13.)  After specifically comparing the *Jones* school's knowledge and failure to act against Defendant's lack of pre-assault notice regarding Smith, the Court found that Plaintiff had not allege any gender-biased conduct *on behalf of Defendant* that created a hostile environment in which Smith assaulted Plaintiff.  (*Id.* at 14.)

Here, by contrast, Plaintiff has already met the first two elements by alleging that (1) Smith engaged in discriminatory conduct based on her sex, and (2) that such conduct was severe enough to have created a hostile educational environment.  (Am. Compl. ¶¶ 11, 20.)  The question before the Court is not whether Defendant took any steps at all to prevent the alleged assault's reoccurrence, but whether Plaintiff alleged enough facts to plausibly claim that Defendant acted unreasonably when addressing the sexual assault once Plaintiff reported it to Defendant.  *See, e.g.*, *L.W.*, 915 A.2d at 540–43 (noting that the school district had taken some limited actions in response to the reported discrimination).

Contrary to Defendant's arguments, Plaintiff has alleged sufficient facts plausibly establishing that Defendant, once on notice of the assault, failed to take actions reasonably calculated to end the harassment.  First, Plaintiff alleges that Defendant had actual knowledge of the sexual assault because she reported it through Defendant's online system (Am. Compl. ¶ 5), her Dean (*id.*), the University Health Center and SHARE Center (*id.* ¶ 21), a formal written report

14

(*id.* ¶¶ 6-8), and her statements at the disciplinary board (*id.* ¶¶ 27). Plaintiff claims that once on notice, Defendant failed to take actions reasonably calculated to end the harassment. (*Id.* ¶ 55.) Specifically, Plaintiff alleges that subsequent sexual harassment occurred in the form of a threatening, sexually explicit anonymous letter sent to her in advance of the disciplinary hearing. (*Id.* ¶¶ 13-17.) Plaintiff reported this letter to Defendant through her Dean and claims that the content of the letter implicates Smith as its author. (*Id.* ¶ 14 n.4.) After receipt of the letter, Plaintiff expressed her concerns for her personal safety, and informed Defendant at the disciplinary board that she was "forced to confront [Smith] on a regular basis" and that "the no-contact order issued by [Defendant] has not been sufficient to protect [Plaintiff] from encountering [Smith]" or stopped Smith from "terrorizing" her. (*Id.* ¶¶ 17-19.) As alleged, Defendant's response to her report of sexual assault and subsequent sexual harassment was to decline to preserve evidence that could have been used at the disciplinary hearing (*id.* ¶¶ 21–23); admitted a letter on Smith's behalf into the disciplinary hearing despite a policy of neutrality (*id.* ¶ 43); allowed Smith to solicit faculty testimony and deprived Plaintiff of the same "critical witness testimony" (*id.* ¶ 30); allowed the hearing to proceed with imbalanced representation (*id.* ¶ 29); and imposed an improper, heightened evidentiary burden of "clear and convincing evidence" (*id.* ¶ 53). Finally, Plaintiff alleges that because of Defendant's failure to reasonably address the sexual assault and harassment, "Plaintiff was left with no other choice than to withdraw" from the graduate program because she would inevitably be in Smith's presence (*id.* ¶ 45), and she was thereby denied the accommodations, advantages, facilities, and privileges provided by Defendant (*id.* ¶ 55).

Accepting these allegations as true and in a light most favorable to Plaintiff, the Court finds that these allegations are minimally sufficient to establish a plausible claim that Defendant failed to take actions reasonably calculated to end the harassment once it had knowledge of the sexual

15

assault.[6]

Finally, Defendant asserts that Plaintiff's argument means "that anything short of expelling [Smith] amounts to the creation of a 'hostile environment' actionable under NJLAD," and that Defendant "would face a NJLAD claim every time a student disagreed with how the University responded to a report of sexual assault." (ECF No. 32-1 at 14–15.) Indeed, a reasonable disciplinary process could have still resulted in the same situation that Plaintiff faced, where a panel exonerates the alleged assailant and the alleged victim must either encounter the assailant regularly or choose to leave. But here, Plaintiff has pled sufficient facts plausibly supporting her claim that it was Defendant's inaction and unreasonable disciplinary process, and not merely Plaintiff's dissatisfaction with the result, that gave rise to her claim. In sum, the Court finds that in her Amended Complaint, Plaintiff has pled sufficient facts to establish all three elements of a hostile educational environment based on gender under the NJLAD.

## IV.     CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 32) is **DENIED**. An appropriate Order follows.

Dated: December 22, 2023

_____
GEORGETTE CASTNER
UNITED STATES DISTRICT JUDGE

---

[6] *See also Jones v. Pi Kappa Alpha Int'l Fraternity, Inc.*, 431 F. Supp. 3d 518, 532 (D.N.J. 2019). Plaintiff, a college student, was sexually assaulted by a fraternity member at a fraternity event, other fraternity members allowed the sexual assault to continue, and plaintiff brought an action under the NJLAD against the fraternity's parent organization under a "hostile educational environment" theory. Recognizing that the "contours of a hostile educational environment claim remain somewhat unsettled" because it is "unclear, for example, whether the plaintiff would have to demonstrate [the fraternity]'s actual notice and deliberate indifference," the court denied the fraternity's motion to dismiss "at this early stage . . .[to] permit factual development." *Id.*